IN THE UNITED STATES DISTRCIT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRAMMELL CROW RESIDENTIAL COMPANY, AS SUCCESSOR IN INTEREST TO TRAMMEL CROW RESIDENTIAL COMPANY, <br><br> Plaintiff, <br><br> vs <br><br> ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY F/K/A GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. <br><br> Defendants. | CIVIL ACTION NO. 3:11-CV-02853-N |

**DEFENDANT, ONEBEACON INSURANCE COMPANY F/K/A GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA'S MOTION TO STAY, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW**

Defendants, ONEBEACON INSURANCE COMPANY F/K/A GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA ("OneBeacon"), by and through its undersigned counsel, files this Motion to Stay, or in the alternative, Motion to Transfer Venue, and in support thereof, state as follows:

**BACKGROUND**

A.   The Underlying Lawsuits

In or around May 2009, Trammel Crow-affiliated entities T.C. Residential Contractors, L.P. ("TCRC") and Southampton Apartments, L.L.C. ("SA") were named as defendants in an underlying action styled *Schapp, et. al v. Southampton Pointe Tarragon, LLC, et. al*, Case No. 2009-CP-10-2978, in the Ninth Judicial Circuit Court of the State of South Carolina, County of Charleston. [D.E. 108, ¶19.]   Thereafter, in or around September 2009, TCRC and SA were

named as defendants in a second lawsuit styled *Southampton Pointe Property Owners Assn., Inc. v. Southampton Pointe Tarragon, LLC, et. al.*, Case No. 2009-CP-10-5830, also in the Ninth Judicial Circuit Court of the State of South Carolina, County of Charleston. [D.E. 108, ¶20.] Both suits, referred to collectively herein as (the "underlying lawsuits"), alleged negligent construction and resulting water intrusion. Wood Partners, LLC, Wood Real Estate Investors, LLC, Ryan Dearborn, Warren Durkin, James Simpson, Deborah Anderson, Martin Heflin and Leonard Wood (collectively, the "Wood Group") were later named as defendants in these underlying lawsuits. [D.E. 108, ¶22.] OneBeacon defended TCRC and SA pursuant to a reservation of rights but denied coverage with respect to the Wood Group. In response, the Wood Group brought claims against Trammell Crow for failing to procure insurance as allegedly agreed. [D.E. 108, ¶¶23-24.]

In May 2012, underlying plaintiffs' claims were settled pursuant to a settlement funded in part by OneBeacon's payment of its policy limits of $1,000,000.[1] [D.E. 108, ¶31.] The Wood Group's action against Trammell Crow alleging that Trammell Crow was obligated to obtain insurance for the Wood Group under Trammell Crow's general liability policies, including the policy issued by OneBeacon, remains pending in South Carolina. [D.E. 108, ¶¶24, 34.]

As part of the settlement of the underlying plaintiffs' claims, the Wood Group assigned its breach of contract and bad faith claims, if any, against OneBeacon to underlying plaintiff, Southampton Pointe Property Owners Association, Inc. ("Southampton"). *See* Exhibit A, ¶ 2.

---

[1] OneBeacon issued Policy Number CGL 0175209-00 to Trammell Crow for the policy period from February 15, 2000 to February 15, 2001 (the "OneBeacon policy").

B.  The Instant Action

Plaintiff in the instant case, Trammell Crow Residential Company ("Trammell Crow"), recently filed its Third Amended Original Complaint alleging causes of action for breach of contract against OneBeacon, St. Paul Insurance Company and National Union Fire Insurance Company.[2]  [D.E. 108.]  Trammell Crow alleges that OneBeacon breached its contract with Trammell Crow by failing to defend the Wood Group in the two underlying lawsuits. [D.E. 108, ¶¶42, 46.] Trammell Crow asserts that this failure caused the Wood Group to bring claims against Trammell Crow for failing to insure the Wood Group and also caused Trammell Crow to have to incur substantial sums to pursue coverage from OneBeacon for the Wood Group. D.E. 108, ¶47].  As such, Trammell Crow's allegations against OneBeacon necessarily require a determination of whether or not OneBeacon owed any duty to defend the Wood Group in the underlying lawsuits.

C.  The South Carolina Litigation

On or about September 13, 2012, a complaint styled *Southampton Pointe Property Owners Association, Inc. v. OneBeacon Insurance Company*, *et. al*, was filed in the Court of Common Pleas, Ninth Judicial Circuit, in and for Charleston County, South Carolina. OneBeacon removed that case to the United States District Court for the District of South Carolina, Charleston Division, where it is currently pending as case number 2:12-cv-03035-RMG (the "South Carolina litigation").  *See* attached Exhibit A.

Plaintiff in the South Carolina litigation, Southampton Pointe Property Owners Association, Inc. ("Southampton") is the assignee of the Wood Group's claims against OneBeacon and St. Paul.  *See* Exhibit B, ¶2.  Southampton alleges that OneBeacon breached its

---

[2] Additional causes of action have been brought against National Union which do not affect OneBeacon or St. Paul.

duty to defend the Wood Group in the underlying lawsuit, causing the Wood Group to incur legal fees and costs in excess of $1.5 million. *See* Exhibit A, ¶15. As with the claims brought by Trammell Crow, the outcome of the South Carolina litigation hinges on whether or not OneBeacon owed any duty to defend the Wood Group in the underlying lawsuits.

## SUMMARY OF ARGUMENT

Both this case and the South Carolina litigation allege that OneBeacon breached its duty to defend the Wood Group in the underlying lawsuits. The Wood Group has assigned that claim to Southampton and therefore, Southampton now owns the claim for coverage that is at the heart of both the instant action and the South Carolina litigation. A final determination in this case cannot be made without a determination of the coverage claim now owned by Southampton, which is currently pending in South Carolina. Problems inherent in litigating the same issue in two different jurisdictions include a waste of resources for the courts and parties involved, as well as the very real risk of inconsistent judgments. Thus, this case must be stayed pending a ruling in the South Carolina litigation regarding whether or not the Wood Group is or was an insured under the OneBeacon policy and whether or not OneBeacon owed a duty to defend the Wood Group in the underlying lawsuits. In the alternative, judicial economy requires that this case be transferred to the District Court for the District of South Carolina pursuant to *28 U.S.C. § 1404(a)*, so that both actions may be litigated and decided together.

## ARGUMENT

### I. This Matter Must Be Stayed Pending A Determination of OneBeacon's Duty, if any, to Defend The Wood Group

The outcomes of both the instant case and the South Carolina litigation turn entirely on whether or not the Wood Group is an insured under the OneBeacon policy and, if so, whether OneBeacon owed any duty to defend the Wood Group. Because the owner of this coverage

claim is currently litigating this very issue in a separately-filed action, this Court should stay the instant action pending the outcome of that case.

The United States Supreme Court has long-held that federal courts have an "inherent" authority to stay proceedings. *See Landis v. North American Co.,* 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Absent a stay in this case, OneBeacon will waste an enormous amount of time, money, and judicial resources on repetitive and overlapping discovery requests and conflicting discovery and pretrial orders. *See, e.g., U.S. Bank, N.A. v. Royal Indem. Co.*, No. CIV.A 3:02-cv-0853-P, 2002 WL 31114069, at *2 (N.D. Tex. Sept. 23, 2002) (granting stay where defendant would suffer undue hardship of "enormous waste of time, money and judicial resources associated with repetitive and overlapping discovery . . ."); *Falgoust v. Microsoft Corp.*, No. CTV.A. 00-0779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000) (granting stay where defendant "would suffer a considerable hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts.").

Here, judicial economy weighs in favor of granting OneBeacon's Motion to Stay. The determination of the issues in this action is entirely dependent on the findings in the South Carolina action. Whether or not Trammell Crow is legally entitled to damages as a result of OneBeacon's denial of the Wood Group's tender of defense cannot be determined unless and until there has been a finding that the Wood Group was or was not entitled to coverage from OneBeacon. Though this Court is obviously capable of making such a determination, and would necessarily have to do so in order to rule on Trammell Crow's claims, the South Carolina action specifically alleges that OneBeacon had a duty to defend the Wood Group and the parties

will be litigating that issue in South Carolina. As such, the District of South Carolina will hear and decide the same issues that this Court must examine and rule on prior to ruling on Trammell Crow's allegations. To allow both cases to continue simultaneously will result in a waste of time, money and resources and carries with it the very real potential for inconsistent judgments.

Any delay as a result of the issuance of a stay will not outweigh the judicial economy interests or the right of OneBeacon to be free from the threat of inconsistent judgments with regard to the same issue.

In contrast to the real and significant harm overlapping suits pose to OneBeacon and the judicial system that will result absent a stay, Plaintiff will not be prejudiced by a stay of such limited duration as has been requested here. The relevant inquiries in deciding a motion to stay--the judicial resources saved, the substantial hardship to the defendant absent a stay, and the lack of prejudice to the Plaintiffs from a stay – all weigh in favor of staying this action pending a ruling on the duty to defend by the South Carolina court. *See La. Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, No. 09-235, 2009 WL 926982, at *1 (E.D. La. Apr. 2, 2009) (noting the three factors courts should consider in deciding a motion to stay); *Falgoust*, 2000 WL 462919, at *2 (same)

Accordingly, in order to promote judicial economy and avoid unnecessary replication of effort and inconsistent rulings, this Court should stay these proceedings pending the conclusion of the South Carolina litigation.

## II. In the Alternative, This Action Should Be Transferred to the District of South Carolina

### A. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

*28 U.S.C. § 1404(a)*.  Judicial economy is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349, 1351 (Fed. Cir. 2009).

Under Fifth Circuit law, there is a two-part test for deciding motions to transfer venue. The first part of the test is whether the claim could have been filed in the judicial district to which transfer is sought. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004).  If so, the court examines several public and private interest factors. *Id.* at 203.  Although judicial economy is not among the list of enumerated factors, it is "a *paramount consideration* when determining whether a transfer is in the interest of justice." *MGM Well Servs., Inc. v. Prod. Control Servs., Inc.*, Civ. Action No. 6:10-cv-88, slip. op. at 2 (E.D. Tex. Nov. 22, 2010) (citing *Volkswagen III*, 566 F.3d at 1351) (emphasis added). In fact, "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (internal quotation omitted); *Volkswagen III*, 566 F.3d at 1351; *Heartland Payment Sys. v. Verifone Israel Ltd.*, 2010 WL 1662478 at *5 (N.D. Cal., April 22, 2010) (granting transfer, as plaintiff's choice of venue was outweighed by such interests as avoiding burdening two courts with the same issues and avoiding inconsistent judgments).

   **B.**  **Plaintiff Could Have Brought This Action in the District of South Carolina.**

When considering a motion to transfer venue under section 1404(a), the first "threshold" determination is whether the plaintiff's claims could have been brought in the proposed transferee district. *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  All of the Defendants

in this action are subject to the jurisdiction of the South Carolina district court. The actions giving rise to the underlying lawsuits occurred in South Carolina and the real property subjects of the underlying lawsuits are located in South Carolina. Further, Trammell Crow has previously submitted to the jurisdiction of the South Carolina court in a number of cases related to the construction of those properties at the heart of the underlying lawsuits.

### C.     Judicial Economy Requires a Transfer to the District of South Carolina.

Judicial economy is a "paramount consideration" when determining whether a transfer is in the interest of justice. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). When similar suits are brought in two different districts, the court must consider the extent to which transfer may increase judicial economy and decrease the risk of inconsistent adjudication. *Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009). Thus, in cases like this one, where the same issue is currently being litigated in another court, courts frequently rely on judicial economy as a basis to grant transfer.

The issue being litigated in both this Court and the South Carolina court is identical. Further, the South Carolina court has jurisdiction over all of the parties in this case. Conversely, this court does not have jurisdiction over Southampton, the owner of the coverage claim at the heart of both suits. The increase in judicial economy and the decrease in the risk of inconsistent judgments that will be realized by transferring this matter are sufficient to override any other factors regarding retention of this case in this Court. The Federal Circuit has reaffirmed the principle that "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *Vistaprint*, 628 F.3d at 1346 (internal citations omitted).

Duplicating the efforts of the District of South Carolina with respect to the coverage issues underlying both this case and the South Carolina litigation would be an inefficient use of judicial resources and would subject OneBeacon to the very real possibility of inconsistent judgments. For these reasons, it is clearly more convenient and appropriate to litigate this issue in South Carolina, and judicial economy considerations particularly favor transfer. *Id*. at 12 (citing *Volkswagen II*, 545 F.3d at 314).

### III. CONCLUSION

For all of the foregoing reasons, OneBeacon respectfully requests that this Court stay the instant action pending a determination of coverage in the South Carolina litigation or, in the alternative, transfer this case to the District of South Carolina.

>Respectfully submitted,
>
>LITCHFIELD CAVO LLP
>
>By:  */s/ John R. Catizone*
>     John R. Catizone
>     *Pro Hac Vice*
>     Radice Corporate Center
>     600 Corporate Drive, Suite 600
>     Fort Lauderdale, FL 33334
>     (954) 689-3000
>     (954) 689-3001 (Fax)
>     catizone@litchfieldcavo.com
>
>     Mindy K. Bradley
>     Texas Bar No. 00788193
>     3040 Post Oak Blvd. Suite 1750
>     Houston, Texas 77056
>     (713) 418-2000
>     (713) 418-2001 (Fax)
>     bradley@litchfieldcavo.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on **November 9, 2012**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                        */s/ John R. Catizone*
                                        John R. Catizone